## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SANTANDER CONSUMER USA, INC.,

               Plaintiff,

v.

TOWNSHIP OF YORK and BAKER & SON
SERVICE CENTER, INC.,

               Defendants.

(Electronically Filed)

Civil Case No.: 1:20-cv-02261-JEJ

**AMENDED COMPLAINT**

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Amended Complaint against Defendants, Township of York (the "York") and Baker & Son Service Center, Inc. ("Baker," and with York, "Defendants") alleges:

## NATURE OF ACTION

1.      York regularly seizes vehicles as part of its law enforcement activity but has no procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing.  Instead, York employs the outdated and constitutionally unsound practice of summarily turning over control seized vehicles to the private towing company that towed the vehicle when York seized it.  In this regard, York's policy is to enlist a towing garage to tow and store vehicles and allows those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2.      York's policy and practice of summarily turning over seized vehicles to private tow companies is a joint enterprise from which York benefits by avoiding the cost of preserving the seized vehicles and by avoiding the cost of having to pay for towing services, because the tow company accepts the vehicle as compensation for the services it renders to York in lieu of money. The tow company benefits by using its control over the vehicle (created under mantle of authority from York) to profit by selling the vehicle or by conditioning release of the vehicle upon payment of money to the tow company.

3.      Here, after seizing a vehicle on which Santander holds a lien, York afforded no due process to Santander and instead summarily disposed of its interests in that vehicle by giving it to Baker as payment for the services that York had contracted Baker to provide.  Baker accepted the vehicle from York as compensation, asserted an *ex parte* lien for those services, demanded that Santander satisfy that *ex parte* lien—which Baker insisted took priority over Santander's lien—before it would relinquish possession of Santander's collateral.  Santander paid the demanded $10,059.00 under protest to mitigate its damages.  At no time was Santander afforded notice, a hearing, or just compensation for York's taking of Santander's collateral.

## JURISDICTION AND VENUE

4.      This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5.      The District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6.      Venue lies in the Court pursuant to 28 U.S.C. § 1391 because the Defendants reside in this district and because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

7.      Plaintiff Santander Consumer USA, Inc. ("Santander" or "Plaintiff') is a corporation organized and existing by virtue of laws of the State of Illinois and the holder of the duly perfected security interest and lien in a 2020 Toyota Camry vehicle identification number

2

4T1MM1AK7LU863035 (the "Vehicle").   Santander's regular business includes providing leasing and financing for the purchase or lease of automobiles.

8.     Defendant York is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

9.     Defendant Baker is a corporation organized and existing under the Commonwealth of Pennsylvania.

## FACTS

### York's policy for disposing of seized vehicles

10.     York carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

11.     York delegates a portion of the performance of its essential functions to Baker. Specifically, York police utilize Baker to tow away, store, and dispose of vehicles seized by the York police acting in the course of their duties as law enforcement officers.

12.     Pursuant to this relationship, York exercises governmental authority to seize vehicles.

13.     Rather than attempt to return these seized vehicles to the person from whom they are seized, or give them to another person with a pre-existing property interest (like a lienholder), York instead places seized vehicles in the possession of its tow operators, including Baker, for disposal.

14.     York thereby extends the mantle of its authority to its tow operators, like Baker, to ensure that the tow operators have a basis to claim that detention of the vehicle is lawful

(rather than an act of theft as it would be if the tow operators took the vehicle without police authority, see 18 Pa.C.S.A. §§ 3921, 3924).

15.     Baker (and the other of York's tow operators) accept the seized vehicles from York—which vehicles York does not own—as either partial or total payment for the towing and storage services Baker provides to York.

16.     York facilitates Baker's acceptance of seized vehicles by summarily treating vehicles as abandoned, even where they do not meet the definition of abandoned under Pennsylvania law or any meaning of the word "abandoned."

17.     Baker (and the other of York's tow operators) then impress an *ex parte* lien for towing and storage fees, which they claims supersedes any other persons' rights in these vehicles.

18.     After assessing an *ex parte* lien, Baker (and the other of York's tow operators) refuse to return possession of the vehicles to *any* other person, even those with pre-existing property rights in the seized vehicles, while claiming additional daily storage charges.

19.     To effectuate disposal of a vehicle, Baker eventually forecloses its purported lien by taking title to the vehicle—facilitated by York's declaration that a vehicle was "abandoned," whether or not it was actually abandoned—and then selling it and keeping the proceeds.

20.     York benefits from granting the mantle of authority to control vehicles to towing companies as York is thereby relieved of the burden and costs of preserving such vehicles. Without Baker's conduct, York would be forced to store and preserve vehicles following seizure.

21.     York benefits from Baker's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles.  Without Baker's conduct, York would be forced to pay Baker for the services Baker provides York by using money instead of the vehicles that were seized.

4

22.     It is York's and Baker's regular policy and custom, in the course of the above-described conduct, **not** to obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

    A.     The initial seizure of the vehicle;

    B.     The determination that a vehicle is abandoned;

    C.     The turnover of possession of the vehicle to Baker;

    D.     The decision by York and/or Baker to continue to detain the vehicles after the initial reason for the seizure has passed;

    E.     The decision of Baker to assert an *ex parte* lien; and

    F.     The eventual change in title/sale of the vehicle.

23.     Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action York or Baker decide to take thereafter.  Rather, once the reasons for the (possibly valid) initial warrantless seizure have dissipated, York and Baker are required to return the seized property, obtain a warrant, or obtain a new justification for a warrantless seizure.

24.     It is York's and Baker's regular policy and custom, in the course of the above-described conduct, to not provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

    A.     The initial seizure of the vehicle;

    B.     The determination that a vehicle is abandoned;

    C.     The turnover of possession of the vehicle to Baker;

    D.     The decision by York and/or Baker to continue to detain the vehicles after the initial reason for the seizure has passed;

    E.     The decision of Baker to assert an *ex parte* lien; and

F.    The eventual change in title/sale of the vehicle.

25.    These actions, all taken in accordance with York's and Baker's regular policy and custom for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution.

26.    York regularly disposes of vehicles seized by its police and/or pursuant to its police powers by declaring them "abandoned," which, upon information and belief, is dozens or hundreds of vehicles annually.

27.    York's regular treatment of seized vehicles as "abandoned" is, upon information and belief, a part of a written but unpublished policy or procedure of the town's police department.   Alternatively, it is a practice by the York police that is so widespread and permanent so as to constitute a custom or usage with the force of law.

## York seized the Vehicle, in which Santander held a protectable interest, and gave it to Baker for disposal

28.    On or about October 31, 2019, Santander perfected its security interest and lien in the Vehicle.

29.    On or about July 15, 2020, Baker actively and regularly towed and stored vehicles at the direction of York police officers acting in the regular course of their duties as law enforcement officers, as described above.

30.    On or about July 15, 2020, York seized the Vehicle and instructed Baker to tow it away from the roadway and store it at York's direction.

31.    Santander did not, at any time, have physical possession or custody of the Vehicle.

32.    Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by the York Police and/or Baker.

33.     Neither York nor Baker took any measure to inform Santander of the seizure and disposal of the Vehicle.

34.     Once Baker towed the Vehicle, York had no law enforcement need to detain the vehicle.

35.     Upon concluding its need to hold the Vehicle, York did not return the Vehicle to Santander or anyone else.  Instead, York proceeded to dispose of the vehicle by summarily treating it as an abandoned vehicle.

36.     Upon information and belief, York did not undertake any proceedings, provided for under Pennsylvania law or otherwise, to adjudicate whether the vehicle had actually been abandoned.

37.     Upon information and belief, York did not follow any process provided for under Pennsylvania law for the disposition of abandoned vehicles.

38.     The circumstances of York's seizure of the Vehicle did not render the Vehicle "abandoned" under Pennsylvania law or under any meaning of that word.

39.     Upon information and belief, York did not undertake any proceedings, provided for under Pennsylvania law or otherwise, to adjudicate whether the vehicle had actually been abandoned.

40.     The Vehicle, of course, was not "abandoned," but rather had been taken by the York Police from the person in possession, and later intentionally withheld from Santander.

41.     York did not notify Santander after its need to hold the vehicle ended or that York intended to dispose of the Vehicle.

42.     York did not compensate Santander for the taking of its vehicle, which occurred when York declared the vehicle to be abandoned to facilitate York's use of the vehicle to compensate Baker for Baker's services.

43.     York did not ensure that its agent, Baker notified Santander that York had authorized detention and disposal of the Vehicle.

44.     York benefited from Baker's detention of the Vehicle to secure payment in that York was freed from the cost and burden of preserving the Vehicle and obtained Baker's services to clear the roadway and store the Vehicle with no payment (or reduced payment) of money from York to Baker.

45.     Baker only possessed the Vehicle by virtue of its relationship with York and acted in concert with York to seize, detain, and dispose of the Vehicle.  Baker had no other right to remove the Vehicle from the roadway and hold it against anyone.  Baker was, therefore, required to comply with the Constitution in relation to its seizure, detention, and disposal of the Vehicle.

46.     Baker asserted that it was entitled to legal possession of the Vehicle and asserted a lien against the Vehicle for towing and storage fees of $10,059.00.

1.     Upon discovering Defendants' actions as stated, Santander demanded that York and Baker release the Vehicle to Santander, but Baker refused to do so unless Santander paid $10,059.00 to Baker.

2.

3.     On or about August 10, 2020, Santander paid the sum of $10,059.00 to Baker under protest in order to retake possession of the Vehicle.

4.      York's disposal of the Vehicle by declaring same abandoned and turning over possession to Baker was consistent with and/or part a York's regular policy, custom, and/or practice for disposing of a vehicle that is seized by its police and/or pursuant to its police powers.

**York and Baker's conduct constituted unreasonable seizures of Santander's property in violation of the Fourth and Fourteenth Amendments**

5.      York meaningfully interfered with protectable interests in the Vehicle.

6.      In arranging to place the property of another, *i.e.* the Vehicle, into the possession of Baker for purposes of disposing of it, York further meaningfully interfered with protectable interests in the Vehicle.

7.      York further interference with protectable interests in the Vehicle by classifying that Vehicle "abandoned."

8.      York and Baker interfered with protectable interests in the Vehicle through Baker's continued detention of the Vehicle to secure payment of an alleged lien for towing and storage charges for alleged services Baker rendered to York.

9.      In detaining the Vehicle to secure payment of an alleged lien for towing and storage charges for alleged services Baker rendered to York, Baker meaningfully interfered with protectable interests in the Vehicle while acting under color of law.

10.      York and Baker further meaningfully interfered with property in which Santander held a protectable interest—namely, $10,059.00—by forcing Santander to part with that money in exchange for possession of another property in which Santander held a protectable interest—namely, the Vehicle.

11.      These meaningful interferences with protectable property interests in the Vehicle by both York and Baker constituted seizures of the Vehicle under the Fourth Amendment to the United States Constitution.

12.     Defendants' actions constituted multiple distinct seizures of the Vehicle: first, by removing the Vehicle from the roadway; second, by placing it into the possession of Baker; third, by continuing to detain the Vehicle; and fourth, by asserting an *ex parte* lien to secure payment of Baker's alleged towing and storage fees.  Baker's taking of Santander's $10,059.00 constituted a fifth.

13.     Defendants were required to have separate justifications for each of the seizures not accompanied by a warrant, or to obtain a warrant.

14.     Defendants did not have a warrant or any other court order authorizing any of these distinct seizures.

15.     There is no valid exception to the warrant requirement for York and Baker's conduct for any of these distinct seizures of the Vehicle.

16.     In particular, there is no valid exception to the warrant requirement for turning over possession of another person's property (the Vehicle), nor for accepting possession of that property, in lieu of payment for services.

17.     There is also no valid exception to the warrant requirement for continuing to detain a person's property (the Vehicle) as collateral to secure payment of an *ex parte* lien.

18.     There is also no valid exception to the warrant requirement for taking a person's property (the $10,059.00) in exchange for some other of that person's property (the Vehicle).

19.     Because none of the seizures were accompanied by any warrant, court order, or valid exception to the warrant requirement, each distinct seizure was unreasonable in violation of the Fourth Amendment to the United States Constitution.

**<u>York and Baker's conduct constituted deprivation of Santander's property without due process of law in violation of the Fourteenth Amendment</u>**

20.     York is required to comply with due process requirements and to provide holders of property interests in vehicles, including Santander, with notice and an opportunity to be heard before any deprivation of an interest in a seized vehicle.

21.     York did not secure judicial review of its initial seizure of the Vehicle, neither before nor shortly after the seizure occurred.

22.     York did not secure judicial review of its placement of the Vehicle into Baker's possession, neither before nor shortly after the seizure occurred.

23.     Neither York nor Baker secured judicial review of York and Baker's continued detention of the Vehicle to secure payment of an alleged *ex parte* lien for towing and storage fees relating to the services Baker performed for York.

24.     Neither York nor Baker secured judicial review of the amount—$10,059.00—which Baker extracted from Santander in exchange for the Vehicle.

25.     In delegating its essential governmental function of clearing the roadway to Baker, York does not require Baker to provide procedural safeguards, such as notice and opportunity to be heard, to interested parties prior to imposition of a lien on the towed vehicle or the continued detention of the vehicle and accrual of storage charges.

26.     Because neither York nor Baker provided any procedure for review of their actions by a neutral decisionmaker, neither provided Santander with constitutionally adequate notice of those procedures.

27.     The manner in which Santander became aware of York and Baker's seizure of the Vehicle, as well as Baker's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

28.     By neither providing constitutionally adequate notice, nor any right to be heard before a neutral decisionmaker regarding any of the aforementioned actions, York and Baker's actions deprived Santander of its property without due process of law in contravention of the Fourteenth Amendment to the United States Constitution.

29.     York and Baker's conduct in using an inapplicable abandoned motor vehicle statute to fund York's seizure of the Vehicle also violated substantive due process.

**York's turnover to Baker of the Vehicle as compensation for the services Baker rendered to York violated the Fifth Amendment's prohibition on taking property without just compensation**

30.     Part of York's essential government functions is to seize vehicles through its police for a variety of reasons.

31.     York delegated a portion of the performance of that essential function to Baker, who towed, stored, and detained the Vehicle at the request of the York police.

32.     York compensated Baker, in whole or in part, by turning over possession of the Vehicle to Baker, who only lawfully possessed the Vehicle by virtue of having obtained it from York.

33.     Baker accepted the Vehicle as compensation, in whole or in part, for the services it provided to York, namely, the towing and storage of the Vehicle that York had seized.

34.     York facilitated Baker's acceptance of the Vehicle as compensation for its services by summarily treating the Vehicle as "abandoned," even though it did not meet the definition of "abandoned" under Pennsylvania law or any meaning of that word, since it had been seized, not abandoned.

35.     York benefited by granting the mantle of its authority to control the Vehicle to Baker by being relieved of the burden and costs of towing and storing the Vehicle, or of compensating Baker for towing and storing the Vehicle.

36.     York thereby took Santander's interests in the Vehicle for public use.  By taking Santander's private property for public use, without compensation to Santander—indeed, forcing Santander to pay $10,059.00 for the return of that property—York and Baker's actions violated the takings clause of the Fifth Amendment to the United States Constitution.

## CAUSES OF ACTION

### COUNT I
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property by Unreasonable Seizure)**
**(Deprivation of Property Without Due Process of Law)**
**(Taking of Property Without Just Compensation)**
**(as against all Defendants)**

37.     Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

38.     Santander is the holder of a protectible property interest in the Vehicle.

39.     Defendants acted under color of state law to deprive Santander of valuable property interests—namely (a) Santander's ownership interest in the Vehicle; (b) Santander's money that Baker sought to force Santander to pay to Baker; and (c) Santander's right to possession of the Vehicle—by seizing, detaining and disposal of the Vehicle without providing any form of notice or hearing whereat Santander could protect its interests, and without any compensation to Santander.

40.     Defendants acted under color of law to seize Santander's property, and such seizure was unreasonable.

41.     Defendants acted under color of law to deprive Santander of its property without due process of law.

42.     Defendants acted under color of law to deprive Santander of its property for public purposes without just compensation to Santander.

43.     York and Baker knew or should have known that their actions violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

44.     As a direct and proximate result of York and Baker's violation of Santander's constitutional rights, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost income stream due to Santander relating to the Vehicle, the $10,059.00 wrongfully extracted from Santander by Defendants, and other damages.

45.     York provided a mantle of authority that enhanced the power of Baker and was the moving force that allowed Baker to exercise control over the Vehicle.

46.     The conduct taken by York and Baker in relation to the Vehicle were taken in accordance with York's and baker's standard policy and/or custom for the handling and disposal of seized vehicles.

47.     The failure by York and Baker policy makers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention, and assertion of charges and liens against vehicles—as made clear by numerous Court decisions confirming well settled rules of law—amounts to deliberate indifference to the rights of persons who have interests in vehicles that are seized, detained, subjected to charges, and liened by Baker after seizure by York.

48.     But for York's and baker's deprivational policy, decisions, practices, and failures above described, Santander would have had the right to recover and would have recovered the

Vehicle without delay or with minimal delay by reason of measures that preserve legitimate interests but are less intrusive than continued detention of the vehicle; without incurring liability for or loss due to towing and storage charges impressed *ex parte*; and without incurring liability for or loss due to further storage charges accruing daily and without loss of lien priority to the claim asserted by Baker against the Vehicle.

49.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

## COUNT II
### Violation of Pennsylvania's Constitution
### (Deprivation of Property by Unreasonable Seizure, Uncompensated Takings and Without Due Process of Law)
### (as against all Defendants)

50.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

51.     York and Baker's violations of the Fourth, Fifth, and Fourteenth Amendment to the U.S. Constitution as aforesaid constitute violations under the Pennsylvania State Constitution.

52.     This Court may provide equitable remedies, including a permanent injunction, to remedy York and Baker's state constitutional violations.

## COUNT III
### Declaratory Relief
### (as against all Defendants)

53.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

54.     Defendants assert that their conduct is constitutional.

55.     Santander contends that Defendants' conduct was unconstitutional.

56.     An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

57.     Santander seeks a declaration that York and Baker's conduct as detailed herein violated Santander's rights to be free from unreasonable seizures and uncompensated takings withoutDue Process under the Constitutions of the United States and Pennsylvania.

58.     York and Baker's unconstitutional conduct will continue to harm Santander, which has liens on substantial numbers of vehicles on the road, and other lienholders, without a declaration as to the unconstitutionality of the customs, policies and practices which led to the unconstitutional handling of the Vehicle.

59.     To the extent York and/or Baker rely on any provision of Pennsylvania State law to justify their actions, this Court may also issue a declaration that such provisions of Pennsylvania State law are unconstitutional as applied, if applicable.

**COUNT IV**
**Conversion**
**(As Against Baker only)**

60.     Santander realleges and incorporates herein by reference to the allegations set forth in the prior paragraphs herein.

61.     Baker exercised wrongful dominion and control over the Vehicle be refusing to release it to Santander.

62.     Baker had no right to insist Santander pay it $10,059.00 to relinquish control of the Vehicle.

63.     Santander has suffered damages for lost value, loss of use, loss of stream of income related to the Vehicle, loss of $10,059.00, depreciation, and other actual damages as a result of Baker's conduct.

64.     The actions of Baker in refusing to release the Vehicle unless Santander complied with Baker's demands, required Santander to litigate this issue against York, thereby entitling Santander to recover its attorneys' fees as consequential damages of Baker's actions.

## PRAYERS FOR RELIEF

WHEREFORE, Santander requests that this Court:

A.    Grant judgment in favor of Santander and against Defendants on all causes of action;

B.    Declare that Defendants violated Santander's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution;

C.    Declare unconstitutional, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, York's policy and/or custom of effectuating the governmental purpose of clearing motor vehicles from the roadway by compensating tow operators with the property of others—namely, other persons' motor vehicles—and permanently enjoin such practices;

D.    Declare unconstitutional, in violation of the Fourth, Fifth, and Fourteenth Amendments, York's policy and/or custom of placing other persons' motor vehicles into the possession of third party tow operators, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the propriety of York's actions in disposing of those vehicles, and permanently enjoin such practices;

E.    Permanently enjoin Baker from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including York, without providing notice and a hearing whereat persons with protectable interests may challenge Baker's actions;

F.    Award Santander actual and nominal damages against all Defendants, jointly and severally;

G.    Award Santander the cost of prosecuting this action together with attorneys' fees pursuant to 42 U.S.C. § 1988;

H.    Award compensatory damages, consequential damages, punitive damages, costs, and attorneys' fees against York and in favor of Santander;

I.    Declare any reliance by Defendants on state or local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such state or local law, to the extent determined applicable and only to the extent relied on by Defendants, to be unconstitutional as applied; and

J.    Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

18

Dated: December 14, 2020

**Norris McLaughlin, P.A.**

By:    */s/ Rebecca J. Price*     
       Rebecca J. Price, Esq.
       Attorney I.D. No. 206182
       T: 610-391-1800
       E: rprice@norris-law.com
       *Counsel for Santander Consumer USA, Inc.*